UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN MACKENZIE,

                         Petitioner,

        *- against -*

RAYMOND CUNNINGHAM,

                         Respondent.

12 Civ. 2452 (NSR) (PED)

**REPORT AND
RECOMMENDATION**

TO THE HONORABLE NELSON STEPHEN ROMÁN, United States District Judge:

## I. INTRODUCTION

On October 7, 1975, petitioner John MacKenzie shot and killed a police officer during the course of a burglary in West Hempstead, New York.  On January 19, 1982, following a second jury trial,[1] petitioner was convicted of second degree murder, second degree manslaughter, second degree burglary, second degree grand larceny, third degree criminal possession of a weapon and possession of burglar's tools.  He was sentenced to, and is currently serving, an aggregate, indeterminate prison term of twenty-five years to life.  Petitioner is incarcerated at Woodbourne Correctional Facility in Woodbourne, New York.

Presently before this Court is petitioner's *pro se* Petition for a Writ of Habeas Corpus

---

[1] On September 16, 1976, following a jury trial, petitioner was convicted of second degree murder, first degree manslaughter, second degree burglary, second degree grand larceny, third degree criminal possession of a weapon, possession of burglar's tools and unlawful possession of noxious materials.  On appeal, the Second Department reversed and remanded for a new trial on the ground that petitioner's pretrial statements were erroneously admitted.  People v. MacKenzie, 78 A.D.2d 892, 432 N.Y.S.2d 901 (2d Dep't 1980).

pursuant to 28 U.S.C. § 2254, challenging the constitutionality of New York's parole statute and the New York State Parole Board's 2006 and 2009 decisions denying him parole.  This petition is before me pursuant to an Order of Reference dated April 12, 2012  (Dkt. #29).  For the reasons set forth below, I respectfully recommend that Your Honor deny the petition in its entirety.


## II. BACKGROUND[2]

### A.   2006 Parole Hearing

Petitioner first became eligible for parole in 2000.  He received parole hearings in November 2000, November 2002 and June 2005 before a panel of the Division of Parole ("Parole Board" or "Board"), who denied parole on each occasion.

On August 15, 2006, petitioner appeared before the Parole Board for his fourth parole hearing.  See Resp. Decl., Exh. A.[3]  During the hearing, petitioner stated *inter alia* that he had arranged employment upon his release, earned a bachelor's degree in business administration during his incarceration, taken (and benefitted from) many prison programs (including aggression replacement, substance abuse and violence alternatives), and instituted a victim program in Green Haven.  Id. at 2-6, 12-13.  Petitioner also stated he had accepted full

---

[2]  Unless otherwise indicated, the information within this section is gleaned from the instant petition ("Pet.") (Dkt. #1), petitioner's Memorandum of Law in Support ("Pet. Mem.") (Dkt. #10), respondent's Declaration in Opposition to the Petition for a Writ of Habeas Corpus ("Resp. Decl.") (Dkt. #12), respondent's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("Resp. Mem.") (Dkt. #13), petitioner's Affidavit in Reply to Respondent's Opposition ("Reply") (Dkt. #18) and petitioner's Supplemental Memorandum in Support ("Supp. Mem.") (Dkt. #36).

[3]  Hereinafter, all citations to "Exh. ___" refer to exhibits attached to respondent's Declaration in Opposition.

responsibility for his actions and acknowledged that, upon reflection, he had "made lots of bad choices" which "affected . . . tragically, other people's lives at the time." Id. at 7, 13.  A commissioner noted petitioner's "good disciplinary record" and the fact the he had not received any misbehavior reports in more than twenty-six years. Id. at 7.  Petitioner expressed his belief that his interview was an exercise in futility because "I believe in your heart you have a job to do and it doesn't include releasing me." Id. at 15-16.  A commissioner responded that the Parole Board's "job is to consider the release of everyone that comes in front of us.  Also we have the job to weigh all of the factors." Id. at 16.  The commissioner acknowledged that some factors weighed in favor of petitioner's release, including his education and maturity, and stated that the Board would give him "a fair shake." Id. at 16-17.  On August 21, 2006, the Parole Board issued a written decision in which it noted petitioner's "positive educational and therapeutic programs as well as positive behavior" but denied petitioner parole because his "release to supervision at this time would deprecate the serious nature of [his] instant offense and undermine respect for the law." Exh. B at 2.

On or about December 21, 2006, petitioner timely filed an administrative appeal wherein he argued that the Board's denial of parole (1) was not supported by substantial evidence that petitioner would re-offend if released and (2) violated due process because it constituted resentencing imposed to appease political interests and public pressure.  See Exh. C.  It appears, and respondent concedes, that the Division of Parole Appeals Unit never decided petitioner's administrative appeal.  See Resp. Mem. at 11.

On or about June 5, 2007, petitioner commenced an Article 78 proceeding seeking to vacate the Board's 2006 parole denial on the grounds that its decision: (1) was arbitrary and capricious and not supported by any evidence that petitioner would re-offend upon release; (2)

violated petitioner's due process rights because it was influenced by political pressure and public opinion; (3) failed to explain why petitioner's positive institutional record did not outweigh his past criminal behavior; (4) imposed an excessive twenty-four month hold; and (5) constituted resentencing. See Exh. D at 1-16. By Decision and Judgment dated December 6, 2007, the Albany County Supreme Court (Stein, J.) determined that the Board's 2006 denial of petitioner's request for parole release "was not irrational, arbitrary and capricious, or contrary to law" and, accordingly, dismissed the Article 78 petition. See Exh. G at 2-5.

Petitioner timely appealed the denial of his Article 78 petition to the New York State Appellate Division, Third Department, on the same grounds he raised in his petition. See Exh. H. By Memorandum and Order dated September 24, 2008, the Third Department affirmed the lower court's dismissal of the Article 78 petition. MacKenzie v. Dennison, 55 A.D.3d 1092, 866 N.Y.S.2d 384 (3d Dep't 2008). Petitioner did not seek leave to appeal the Third Department's adverse ruling to the New York Court of Appeals.

**B.       2009 Parole Hearing**

On March 10, 2009, petitioner appeared before the Parole Board for his fifth parole hearing. See Exh. L. During the hearing, petitioner stated *inter alia* that he had arranged housing and work at the Zen Mountain Monastery in Mount Tremper, New York upon his release, completed many prison programs (including aggression replacement, substance abuse and vocational programs), and instituted a victim's awareness program in 1996. Id. at 8-9, 23-24. Petitioner also stated that, although he had no independent recollection of the crime because he had been on prescribed medication at the time, he "finally accepted the fact that [he] did this" and "stopped blaming everybody and took responsibility." Id. at 6-7, 18. A commissioner noted that it was "much to [petitioner's] credit" that he had not received any misbehavior reports in the

last twenty-nine years.  Id. at 23.  The commissioner also acknowledged receipt of a "variety of letters" on petitioner's behalf from third parties, including one from Carl Gervarsi, owner of Boston Road Tires in the Bronx, who guaranteed employment for petitioner upon his release.  Id. at 24-25.  In response to a question from petitioner, the commissioner acknowledged that the Board may have received letters opposing petitioner's release, and stated "[i]f they exist that is just one of several factors [the Board is] required to consider under Executive Law 259."  Id. at 26-27.  Petitioner expressed doubt, in light of his previous denials of parole, that this panel would hold differently; a commissioner responded that, while he could not speak for other Boards, this panel would consider all of the statutory factors together, "try to weigh them and then we try to come to what we think is a fair and right decision."  Id. at 28-30.  In response to petitioner's further question about the deliberative process, the commissioner stated "you're trying to get into some legal sparring thing here. . . . You're asking to lock us in positions . . . . We consider everything we're required to under the law."  Id. at 30-31.  On March 16, 2009, the Parole Board issued a written decision in which it acknowledged petitioner's clean disciplinary record and his progress and achievements as a result of his participation in institutional programming, but denied petitioner parole because his "discretionary release at this time . . . would not be compatible with the welfare of society at large, and would tend to deprecate the seriousness of [his] instant offense, and undermine respect for the law."  Exh. M at 2.

On or about March 10, 2009 (following the Parole Board hearing but prior to its written decision), petitioner filed a Notice of Appeal with the New York State Executive Department Division of Parole.  See Exh. N.  By letter dated March 13, 2009, the Division of Parole Appeals Unit notified petitioner that July 13, 2009 was the latest date for submitting the document perfecting his appeal, absent a written request for an extension of time.  See id.  Petitioner

perfected his appeal in September 2009 but the Appeals Unit took no action.  See Resp. Mem. at 22.[4]

On or about April 21, 2009, before he perfected his administrative appeal, petitioner filed a *pro se* state habeas corpus petition challenging all five denials of parole, on the grounds that the Parole Board's decisions: (1) constituted breach of contract, because petitioner had a reasonable expectation that he would be granted parole if he participated in prison rehabilitative programs; (2) constituted resentencing, in violation of the Separation of Powers provision of the Constitution; and (3) were mandated by former Governor Pataki's policy of denying parole release to all violent felons.  See Exh. O.  On or about October 20, 2009, the Sullivan County Supreme Court (LaBuda, J.) denied petitioner's application.  See Resp. Mem. at 23.[5]  Petitioner appealed the denial of his state habeas petition to the Third Department; the Appellate Division affirmed on November 23, 2010.  MacKenzie v. Cunningham, 78 A.D.3d 1434, 910 N.Y.S.2d 706 (3d Dep't 2010).

**C.    The Instant Habeas Petition**

Petitioner timely[6] filed the instant habeas petition on or about July 22, 2009,[7] wherein he asserts the following claims:  (1) New York's parole statute (Executive Law § 259-I) is

_____

[4]  Petitioner's administrative appeal brief is not in the record.  Petitioner did not submit a copy and respondent was unable to locate one.  See Resp. Mem. at 22, n.3.

[5]  The decision denying state habeas relief is not in the record.

[6]  See 28 U.S.C. § 2244(d)(1).  Respondent concedes timeliness.  See Resp. Mem. at 24-25.

[7]  The date on which petitioner placed the instant Petition in the prison mailing system.  See Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001) (extending the "mailbox rule," Houston v. Lack, 487 U.S. 266 (1988), to *pro se* petitions for habeas relief).

unconstitutionally vague; (2) the Parole Board "repeatedly" denied petitioner his due process rights by denying him parole based upon that unconstitutionally vague statute; (3) the Parole Board's decision was predetermined and unconstitutionally influenced by a biased deputy commissioner; and (4) the Board's decisions constituted a "continuous deliberate denial of due process" because they lacked any rational basis and, thus, were arbitrary and capricious.  Pet. at 4.

Apart from petitioner's facial challenge to the parole statute, respondent construes the instant petition as a challenge to the Parole Board's 2006 and 2009 decisions.  See Resp. Mem. at 23-24.  In his reply, petitioner contends that respondent's construction improperly "distort[s]" his argument because he "has suffered such continuous deliberate denial of due process since 2000 and at every one of his five (5) parole appearances *based on the application of an unconstitutional vague statute*."  Reply at 5 (emphasis added).  Thus, petitioner emphasizes that his second claim encompasses his five previous parole denials but he does not dispute that his third and fourth claims are limited to the Board's 2006 and 2009 decisions.  I will address petitioner's claims accordingly.

### III.  DISCUSSION

#### A.    Applicable Law

"Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254.  If there has been procedural compliance with these statutes, the court

must then determine the appropriate standard of review applicable to the petitioner's claim(s) in accordance with § 2254(d). The procedural and substantive standards applicable to habeas review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), are summarized below.

*1. Timeliness*

AEDPA established a one-year statute of limitations for the filing of a habeas corpus petition seeking relief from a state court conviction. See 28 U.S.C. § 2244(d)(1). The one-year limitation period runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
© the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

AEDPA's statute of limitations is tolled during the pendency of a properly filed application for state post-conviction relief, or other collateral review, of a claim raised in the petition. See id. § 2244(d)(2). The one-year limitation period is also subject to equitable tolling, which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 130 S. Ct. 2549, 2562 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). In the Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam)

-8-

(internal quotation marks omitted), which have "prevented [the petitioner] from filing his petition on time," <u>Valverde v. Stinson</u>, 224 F.3d 129, 134 (2d Cir. 2000) (internal quotation marks and emphasis omitted).  The applicant for equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances."  <u>Id.</u>

    *2.  Exhaustion*

A federal court may not grant habeas relief unless the petitioner has first exhausted his claims in state court.  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999); <u>see</u> 28 U.S.C. § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(I) there is an absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); <u>id.</u> § 2254(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented").  The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claims.  <u>Rose v. Lundy</u>, 455 U.S. 509, 518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the

opportunity to pass upon and correct alleged violations of its prisoners' federal rights." <u>Baldwin</u> <u>v. Reese</u>, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." <u>Petrucelli v. Coombe</u>, 735 F.2d 684, 687 (2d Cir. 1984) (citing <u>Smith v. Phillips</u>, 455 U.S. 209, 221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." <u>Galdamez v. Keane</u>, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). The Second Circuit has delineated a number of ways in which a petitioner may fairly apprise the state court of the constitutional nature of his claim, even without citing chapter and verse of the Constitution, including: "a) reliance on pertinent federal cases employing constitutional analysis, b) reliance on state cases employing constitutional analysis in like fact situations, c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." <u>Carvajal v. Artus</u>, 633 F.3d 95, 104 (2d Cir. 2011) (internal quotation marks and citation omitted). A habeas petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court. <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." <u>Reyes v. Keane</u>, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." <u>Grey v. Hoke</u>, 933 F.2d 117, 120 (2d Cir.

1991). Such a procedurally barred claim may be deemed exhausted by a federal habeas court. See, e.g., Reyes, 118 F.3d at 139. However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." Rhines v. Weber, 544 U.S. 269, 277 (2005); see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Padilla v. Keane, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

   *3. Procedural Default*

Federal habeas corpus review of a state court's denial of a state prisoner's federal constitutional claim is barred if the state court's decision rests on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional violation, or show "that failure to consider the claims will result in a fundamental miscarriage of justice." See Coleman v. Thompson, 501 U.S. 722, 750 (1991). See also Lee v. Kemna, 534 U.S. 362, 375 (2002); Dunham v. Travis, 313 F.3d 724, 729 (2d Cir. 2002). A procedural ground is "independent" if "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." See Harris, 489 U.S. at 263 (internal quotation marks omitted). A procedural bar is "adequate" if it is "based on a rule that is firmly established and

regularly followed by the state in question." Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (internal quotation and citation omitted).

In certain limited circumstances, however, "even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule in a particular case is 'exorbitant.'" See Garvey v. Duncan, 485 F.3d 709, 713-14 (2d Cir. 2007) (citing Lee, 534 U.S. at 376). The Second Circuit has set forth the following "guideposts" for evaluating the adequacy of the state procedural bar in the context of "the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances":

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (quoting Lee, 534 U.S. at 381-85).

*4. Standard of Review*

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). See 28 U.S.C. § 2254(a). When reviewing petitions filed subsequent to AEDPA's effective date, a federal court may not grant habeas relief unless the petitioner establishes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the

-12-

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (d)(2).  The AEDPA deferential standard of review will be triggered if the petitioner's claim "was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d); see Bell v. Miller, 500 F.3d 149, 154–55 (2d Cir. 2007).  "For the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

A state court's decision is "contrary to" clearly established Federal law if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that reached by the Supreme Court of the United States]." Williams v. Taylor, 529 U.S. 362, 405 (2000).  As to the "unreasonable application" prong, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A state court decision involves an "unreasonable application" of Federal Supreme Court precedent if (1) "the state court identifies the correct legal rule from [Federal Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or (2) "the state court either unreasonably extends a legal principle from [Federal Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.  However, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (citation omitted).  In other words, "[a]s a

condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

Finally, under AEDPA, the factual findings of state courts are presumed to be correct. See 28 U.S.C. §2254(e)(1); see also Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997).  The petitioner must rebut this presumption by "clear and convincing evidence."  28 U.S.C. §2254(e)(1).

**B.     New York's Parole Statute**

New York's parole system is administered by the Board of Parole.  See N.Y. Exec. Law §§ 259, 259-b.  New York Executive Law § 259-I governs the Board's authority to grant parole for state prison inmates.  Pursuant to that statute, "discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined." N.Y. Exec. Law § 259-i(2)(c)(A).  Rather, the Parole Board may grant discretionary release "after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law." Id.  To guide the Board in its determination, the statute enumerates factors which must be considered (the following five of which were enumerated at all times relevant to the instant petition):

>    (i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates;

>    (ii) performance, if any, as a participant in a temporary release program;

-14-

(iii) release plans including community resources, employment, education and training and support services available to the inmate;

(iv) any deportation order issued by the federal government against the inmate while in the custody of the department of correctional services and any recommendation regarding deportation made by the commissioner of the department of correctional services pursuant to section one hundred forty-seven of the correction law; and

(v) any statement made to the board by the crime victim of the victim's representative, where the crime victim is deceased or is mentally or physically incapacitated.

Id.; 9 N.Y.C.R.R. § 8001.3.[8]  The Parole Board "is not required to give each factor equal weight

or to specifically articulate in its decision each factor it considered."  Gordon v. Alexander, 592

F. Supp.2d 644, 649 (S.D.N.Y. 2009).  "While consideration of these guidelines is mandatory,

the ultimate decision to parole a prisoner is discretionary."  Graziano v. Pataki, 689 F.3d 110,

113 (2d Cir. 2012) (quotation and citation omitted).

## C.    Due Process and Parole

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations

of life, liberty or property; and those who seek to invoke its procedural protection must establish

that one of these interests is at stake."  Wilkinson v. Austin, 545 U.S. 209, 221 (2005).  The

---

[8]  Effective April 7, 2009, the Board must also consider "(vi) the length of the determinate sentence to which the inmate would be subject had he or she received a sentence pursuant to section 70.70 or section 70.71 of the penal law for a felony defined in article two hundred twenty or article two hundred twenty-one of the penal law."  L.2009, c. 56, pt. AAA, § 12.  Effective March 31, 2011, the Board must additionally consider "(vii) the seriousness of the offense with due consideration to the type of sentence, length of sentence and recommendations of the sentencing court, the district attorney, the attorney for the inmate, the presentence probation report as well as consideration of any mitigating and aggravating factors, and activities following arrest prior to confinement; and (viii) prior criminal record, including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement.  L.2011, ch. 62, pt. C, subpt. A, § 38-f-1.

Supreme Court has held that although "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," a state's parole statute may give rise to a constitutionally protected liberty interest if it creates an expectation of release. Greenholz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7, 11-12 (1979) (finding that Nebraska's parole statute created a liberty interest in parole). See also Board of Pardons v. Allen, 482 U.S. 369, 381 (1987) (holding that Montana's parole statute created a protectable liberty interest because it specifically provided that the Parole Board "shall" release the inmate when certain prerequisite findings are made). The Second Circuit thereafter held that New York's statutory scheme creates no such expectation because the state's parole provisions "do not establish a scheme whereby parole shall be ordered unless specified conditions are found to exist." Boothe v. Hammock, 605 F.2d 661, 664 (2d Cir. 1979).

In Sandin v. Conner, 515 U.S. 472 (1995) (a case involving prison disciplinary proceedings), the Supreme Court abrogated the methodology in *Greenholz* and *Allen* for establishing a liberty interest, stating that liberty interests should not depend on the "somewhat mechanical dichotomy" between mandatory and discretionary state regulations. Id. at 479-83. *Sandin* shifted the focus of the inquiry to the nature of the alleged liberty interest, holding that state-created liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84. "Although *Sandin* expressly rejects the approach of drawing negative implications from mandatory language, it does not render language considerations irrelevant to the liberty interest analysis. . . . Given the broad discretion afforded the Parole Board under New York's statutory scheme, *Sandin* does not

-16-

alter the conclusion that inmates in this state have no legitimate expectation of release." Barna v. Travis, No. 97 Civ. 1146, 1999 WL 305515, at *2 (N.D.N.Y. Apr. 22, 1999) (internal citations omitted). Thus, after *Sandin*, the Second Circuit again "squarely held that because the New York parole scheme is not one that creates a legitimate expectancy of release, [New York] prisoners have no liberty interest in parole, and the protections of the Due Process Clause are inapplicable." Graziano, 689 F.3d at 114 (quotation marks and citation omitted).

Even though New York's discretionary parole system does not give rise to a liberty interest in *release*, inmates have "minimal due process rights" that are "limited to not being denied parole for arbitrary or impermissible reasons." Id. at 115 (quotation marks and citation omitted). Inmates who assert a claim for a violation of this minimal due process right "must allege that they were denied parole based on an inappropriate consideration of a protected classification or an irrational distinction." Id. at 116 (quotation marks and citation omitted).

**D.**   **Exhaustion of State Remedies for Parole-Related Claims**

An inmate challenging a denial of parole pursuant to New York's parole scheme must first file an administrative appeal with the Division of Parole's Appeals Unit. See Scales v. New York State Div. of Parole, 396 F. Supp.2d 423, 428 (S.D.N.Y. 2005); see also N.Y. C.P.L.R. ("CPLR") § 7801; N.Y. Comp. Codes. R. & Regs. tit. 9, § 8006.1. If the Appeals Unit fails to issue its decision within four months of the date the appeal is perfected, "the appellant may deem this administrative remedy to have been exhausted, and thereupon seek judicial review of the underlying determination from which the appeal was taken." N.Y. Comp. Codes. R. & Regs. tit. 9, § 8006.4(c). If administrative relief is denied (or deemed exhausted), within four months thereof petitioner must seek relief in state supreme court via an Article 78 petition. See Scales, 396 F. Supp.2d at 428; CPLR § 217 (limitations period for Article 78 proceeding is four

-17-

months).  If the Article 78 petition is denied, "the claim is still unexhausted unless Petitioner

appeals the denial to the Appellate Division and seeks leave to appeal to the New York Court of

Appeals."  O'Kane v. Kirkpatrick, No. 09-CV-6400, 2011 WL 2470522, at *4 (W.D.N.Y. June

20, 2011).[9]

## E.    Claims One and Two:  Void-for-Vagueness Challenges

In his first and second claims for habeas relief, petitioner challenges New York

Executive Law § 259-i both facially and as-applied.  Because petitioner did not raise either claim

in his 2007 Article 78 proceeding, at first blush both claims appear to be unexhausted.[10]

However, by letter dated June 25, 2012 (Dkt. #34), petitioner argues that both claims are

exhausted because he raised them in a *subsequent* Article 78 challenge to his sixth parole denial.

Petitioner did indeed raise his vagueness claims in an Article 78 petition filed on or about April

3, 2011, in which he challenged the Board's June 2010 denial of parole (Dkt. #38-1).  By

Decision and Order dated August 23, 2011, the Sullivan County Supreme Court (LaBuda, J.)

dismissed the Article 78 petition (Dkt. #38-1).  On May 31, 2012, the Third Department affirmed

the lower court's dismissal of the petition.  MacKenzie v. Evans, 95 A.D.3d 1613, 945 N.Y.S.2d

471 (3d Dep't 2012).[11]  The New York Court of Appeals denied leave to appeal on October 25,

---

[9]  Copies of all unpublished opinions and decisions available only in electronic form cited
herein have been mailed to petitioner.  See Lebron v. Sanders, 557 F.3d 76, 78 (2d Cir. 2009).

[10]  Even if petitioner had raised his vagueness challenges in his 2009 state habeas petition
(he did not), challenges to parole decisions are not properly exhausted via state habeas petitions.
See Robles v. Williams, No. 02 Civ. 6102, 2007 WL 2403154, at *2 (S.D.N.Y. Aug. 22, 2007).

[11]  Although petitioner's brief on appeal to the Third Department is not in the record, it
appears (based on the Third Department's decision) that petitioner raised the same arguments he
asserted in his Article 78 petition.

2012. MacKenzie v. Evans, 19 N.Y.3d 815, 979 N.E.2d 814, 955 N.Y.S.2d 553 (2012).

Petitioner has thus fully exhausted his void-for-vagueness claims for purposes of habeas

review.[12]

### 1. Facial challenge

"Facial challenges are generally disfavored." Dickerson v. Napolitano, 604 F.3d 732,

741 (2d Cir. 2010). Courts nonetheless allow facial challenges "from time to time,

particularly–and perhaps only–when the claims are based on the assertion of a First Amendment

right." Id. at 742. Petitioner's facial challenge does not implicate First Amendment rights; the

question of whether such a challenge is permissible at all is "unsettled." Id. at 743. The Second

Circuit has suggested that, to the extent such challenges are permitted, they may be maintained

only when "no set of circumstances exists under which the law would be valid" or "in the

presence of a constitutionally-protected right." Id at 743-45 (citing, inter alia, City of Chicago

v. Morales, 527 U.S. 41, 53 (1999); United States v. Salerno, 481 U.S. 739, 745 (1987)) (internal

quotation marks omitted). Here, petitioner fails to demonstrate that there is no set of

circumstances under which New York's parole statute would be valid. Moreover, as discussed

above, New York's parole scheme does not give rise to a liberty interest in parole and, thus,

petitioner fails to demonstrate that the statute infringes upon a fundamental right. I will

therefore adhere to the "general rule [of] allow[ing] litigants to assert only their own legal rights

and interests, and not the legal rights and interests of third parties." See Farrell v. Burke, 449

---

[12] Petitioner has not sought leave to amend the instant petition to include a challenge to
the Board's 2010 parole denial, nor does the record contain a transcript of petitioner's June 2010
parole hearing or the Board's decision that followed. Accordingly, I decline to construe the
instant petition to assert a claim that the Board's 2010 denial of parole was arbitrary and
capricious.

F.3d 470, 494 (2d Cir. 2006). Accordingly, I conclude and respectfully recommend that petitioner's first claim for habeas relief must be dismissed.

   *2. As-applied challenge*

   Petitioner also claims that New York Executive Law § 259-i is unconstitutional as applied because "the vagueness of the statue, and the exceedingly broad discretion [its] ambiguity confers upon the Deputy Parole Commissioners resulted in the denial of any meaningful due process at [each parole] hearing and the denial of petitioner's parole application every time." Reply at 7. More specifically, petitioner notes his academic, vocational, therapeutic and community achievements and the fact that he has incurred no disciplinary infractions in thirty-four years, and "submits he is an excellent candidate for parole, and should have been granted discretionary release to parole years ago. However, it has been ten (10) years of parole appearances, and ten years of denials as the result of the Deputy Commissioners Parole [sic] repeated application of an unconstitutionally vague statute in the evaluation of Petitioner's Parole application." Reply at 10-11.

   Petitioner does not claim that the parole board's denials were based on considerations outside the statutory factors; rather, petitioner argues that the statutory scheme itself violates his due process right to parole. Petitioner's argument is clearly misplaced because, as discussed above, he has no liberty interest in release and, therefore, "the protections of the Due Process Clause are inapplicable." Graziano, 689 F.3d at 114 (quotation marks and citation omitted). To the extent petitioner argues that the statute is unconstitutionally vague because it authorizes the parole board to give more weight to the severity of the crime at the expense of the other statutory factors, "[a] policy of according substantial weight to the severity of the crime is neither arbitrary nor capricious; indeed, the Board is *required* to consider this factor as part of its

determination, and it is entitled to give whatever weight it deems appropriate to each of [the] statutory factors." Id. at 115 (emphasis in original).  In sum, "[t]he Due Process Clause is not violated by the Board's balancing of the statutory criteria, which is the Board's primary responsibility and is not properly second-guessed by this Court." Mathie v. Dennison, No. 06 Civ. 3184, 2007 WL 2351072, at *6 (S.D.N.Y. Aug. 16, 2007).  Accordingly, I conclude and respectfully recommend that petitioner's second claim for habeas relief must be denied.

F.      **Remaining Claims**

In his third and fourth claims for habeas relief, petitioner argues that the Parole Board's 2006 and 2009 denials of parole were arbitrary and capricious.  Both of these claims are unexhausted.  Petitioner filed an Article 78 petition seeking to vacate the Board's 2006 parole denial on the grounds that its decision was, *inter alia*, arbitrary and capricious, and then appealed the denial of his Article 78 petition to the Third Department.  The Third Department affirmed (on September 24, 2008), but petitioner did not seek leave to appeal the Appellate Division's adverse ruling to the New York Court of Appeals.  Regarding the Board's 2009 parole denial, petitioner perfected his administrative appeal but did not file an Article 78 petition.[13]

Nevertheless, petitioner's third and fourth claims are "deemed exhausted" because he no longer has remedies available in the state courts.  See Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994).  Petitioner can no longer challenge the 2006 and 2009 parole denials via an Article 78 petition because the four month statute of limitations has expired.  See CPLR § 217.  Further, because petitioner was served with a copy of the Third Department's September 24, 2008

---

[13]  Petitioner did not allege in his state habeas petition that either the 2006 or 2009 parole denial was arbitrary and capricious and, even if he had, challenges to parole decisions are not properly exhausted via state habeas petitions.  See Robles, 2007 WL 2403154, at *2.

decision on or about October 27, 2008, see Exh. K, his time within which to seek leave to appeal to the Court of Appeals expired on or about November 27, 2008. See CPLR § 5513.

Although petitioner's third and fourth claims are deemed exhausted, his forfeiture of those claims in state court "bars him from litigating the merits of those claims in federal habeas proceedings, absent a showing of cause for the procedural default and prejudice resulting therefrom." See Grey, 933 F.2d at 121. Alternatively, this Court may review the merits of petitioner's third and fourth claims if he shows that the failure to consider the claims will result in a fundamental miscarriage of justice because "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986). See also Schlup, 513 U.S. at 316. Here, however, petitioner does not allege cause or prejudice for his procedural default, nor has he proffered new evidence of his innocence or otherwise availed himself of the fundamental miscarriage of justice exception. Accordingly, I conclude and respectfully recommend that petitioner's third and fourth claims for habeas relief are procedurally barred from consideration by this Court and must be dismissed.[14]

## IV. CONCLUSION

For the reasons set forth above, I conclude—and respectfully recommend that Your Honor should conclude—that the instant petition for a writ of habeas corpus should be denied in its entirety. Further, because reasonable jurists would not find it debatable that petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I

---

[14] Dismissal of a claim for habeas relief on the ground of procedural default amounts to "a disposition of the habeas claim on the merits." See Carvajal, 633 F.3d at 104.

recommend that no certificate of appealability be issued.  See 28 U.S.C. § 2253(c); Slack v.

McDaniel, 529 U.S. 473, 483–84 (2000).


Dated:   April 23, 2014
          White Plains, New York

                                        Respectfully submitted,



                                        Paul E. Davison, U.S.M.J.


**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total

of seventeen (17) days, from service of this Report and Recommendation to serve and file

written objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections, if any, along with

any responses to the objections, shall be filed with the Clerk of the Court with extra copies

delivered to the chambers of the Hon. Nelson Stephen Román , at the Hon. Charles L. Brieant,

Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New

York 10601, and to the chambers of the undersigned at the same address.


Failure to file timely objections to this Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered.  See Caidor v. Onondaga County,

517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to Judge Román.

A copy of this Report and Recommendation has been mailed to:

John MacKenzie
DIN #76-A-3447
Woodbourne Correctional Facility
99 Prison Road
P.O. Box 1000
Woodbourne, New York 12788